IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| K.C. 1986 Limited Partnership, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 02-853-CV-W-NKL |
| | ) | |
| READE MANUFACTURING, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

On January 7, 2005, this Court issued its Allocation Order [Doc. # 399] determining the liability of certain parties for costs relating to the cleanup of the Amour Road Superfund Site, located in North Kansas City, Missouri. Subsequently, K.C. 1986, Donald Horne and Victor Horne moved to amend the Allocation Order [Doc. # 402] to offset their liability by the amount of Borax's settlements. DeAngelo Brothers, Inc., filed a separate Motion to Amend [Doc. # 415] to take into account a statement made orally by the Court in 1997. On April 4, 2005, the Court denied theses motions as untimely [Doc. # 428], and the parties appealed. The Eighth Circuit affirmed the Court's Allocation Order in part, reversed in part, and remanded. *See K.C. 1986 Ltd. P'ship v. Reade Mfg.*, 472 F.3d 1009, 1013 (8th Cir. 2007). Thus, the Court now amends its Allocation Order in accordance with the Eighth Circuit's mandate.

**I.      Remand Issues**

1

The following issues were remanded to this Court: (1) DeAngelo's liability as a successor corporation to Habco; (2) credits for pretrial settlements obtained by Borax from the EPA and private entities against the judgment; and (3) the potential recalculation of prejudgment interest.

### A.     DeAngelo's Liability as Successor Corporation to Habco

In accordance with the Eighth Circuit's mandate, the Court finds DeAngelo is not liable as a successor corporation to Habco. *See id.* at 1026.  As a result, the Court reallocates DeAngelo's 15% share to the Hornes as stated in footnote 7 of the Allocation Order. *See id.*  In the Habco Era, Victor Horne was responsible for 15% of the response costs and Donald Horne (Horne Estate) was responsible for 18%. Reallocating DeAngelo's share on a *pro rata* basis, the new allocation follows:

   Borax:          10%

   K.C. 1986:      20%

   Victor Horne:   22%

   Horne Estate:   48%

The Court reaffirms its method to reallocate orphan shares within an era as described in Part II.D.2.e of the Allocation Order.

### B.     Settlement Credits

At the original trial, the Court only considered the pre-March 1, 2004, response costs but it was understood by both the Court and the parties that Borax continued to incur additional costs. *See id.* at 1015; January 7, 2005, Allocation Order at 41 [Doc. # 399]. The Court contemplated a future determination of post-judgment costs which would be allocated similarly. *See* January 7, 2005, Allocation Order at 41, 55; November 22, 2005 Order at 10-11 [Doc. # 478] ("After the Court of Appeals has issued its ruling in the pending appeal, the Court will take up the issue of the

2

outstanding expenditures that Borax has incurred in post-judgment cleanup costs and future cleanup costs."). Additionally, it was clear from the evidence that the actual amount of the post-judgment cleanup would exceed $5 million.[1]

The Court's original Allocation Order did not credit K.C. 1986 or the Hornes with any settlements received by Borax. Despite a long and arduous process to determine the costs of cleaning up the Amour Road Site and each parties' liability, the settlement credits issues (including the amounts and nature of those settlements) were never presented to the Court, either during pretrial preparation or at trial. *See* April 4, 2005, Order at 2 [Doc. # 428]. As a result, the Court declared the parties' motions for reconsideration untimely. *See id.*

The Eighth Circuit held the Court abused its discretion by refusing to consider the settlement credits issue. *See K.C. 1986*, 472 F.3d at 1016. The Court of Appeals explained that on remand this Court was "to consider in the first instance the issue of offsetting the judgment with settlement credits." *Id.* at 1018. In conclusion, the Eighth Circuit held:

> We reverse and remand in part for future proceedings to permit the district court to consider the application of any settlement credits against the judgment, to reconsider the prejudgment interest award based on any application of settlement credits it may see fit to make . . . . In all other respects, we affirm the judgment of the district court.

*Id.* at 1026. Thus, the Eighth Circuit's mandate is clear that the Court must consider the application of any settlement credits against the judgment. The mandate does not require this Court to reach any

---

[1] In his trial testimony, Ross Overby, Borax's consultant, testified that the costs going forward to remedy and satisfy the EPA's requirements was estimated to be just under $8.6 million. Trial Tr. Vol. 2-A, 327, 336, Aug. 24, 2004. Borax now claims it actually incurred $6,142,895.70 in post-trial response costs, and that it has completed all of the cleanup work required by the EPA under the 2004 Consent Decree. *See* Brief of U.S. Borax on Remaining Post-Appeal Issues at 5, 6 [Doc. # 496].

particular conclusion. With the Eighth Circuit's mandate in mind, the Court now turns to consideration of the settlement credits.

*1. The EPA Settlement*

Under CERCLA, "a judicially approved government settlement, such as Borax's settlement with the EPA, 'does not discharge any of the other potentially liable persons unless its terms so provide, but it reduces the potential liability of the others by the amount of the settlement.'" *K.C. 1986*, 472 F.3d at 1017 (quoting 42 U.S.C. § 9613(f)(1)). The June 2, 2004, consent decree between Borax and the EPA states:

> EPA agrees to reimburse Borax for 30% of the reasonable and necessary eligible response costs incurred by it in carrying out the Work specified in Section IV of the Consent Decree, up to $1,240,000. If costs for the demolition of Site structures and the treatment and off-Site disposal of the demolition debris exceed $240,00, Borax may seek modification of this PDD under 40 C.F.R. Part 307. Borax may submit up to 3 claims for reimbursement during or following the performance of the Work (as defined in the Consent Decree).
>
> This preauthorization is subject to Borax's compliance with the Consent Decree and provisions of this PDD.

June 2, 2004, Consent Decree, Appendix C at 5. K.C. 1986 reasons that because Borax's consultant testified at the allocation hearing that Borax will incur approximately $8.6 million in future response costs, on top of the prior response costs of $1,160,673.17, Borax will easily receive the full $1.24 million from the EPA. The Horne entities then reason that they should get full credit at this time for the maximum amount of the EPA settlement credit to which Borax will be entitled. K.C. 1986 and the other Horne entities also argue that the Court should not in this judgment determine the post March 1, 2004, response costs.

Borax counters that it is not necessarily entitled to a 1.24 million reimbursement; receiving the full settlement amount is contingent on Borax satisfying the EPA's detailed accounting and

4

reimbursement regulations and requirements. Further, Borax states that it has only received $104,767 so far from the EPA (paid August 23, 2006), although it has submitted a second application for the remaining reimbursement.

K.C. 1986 and the Hornes are trying to have it both ways by arguing that the entire EPA settlement should be credited against its pre-March 1, 2004, share yet arguing at the same time that Borax's post-judgment response costs should not be included in the recalculation. Furthermore, the EPA Consent Decree does not state an exact settlement amount: It only states the amount as a percentage of the eligible response costs up to a certain amount, and the Court does not have evidence of that amount in the record.

Given the language and effect of the Consent Decree, as well as the language and policy of CERCLA, K.C. 1986, Victor Horne or the Horne Estate should not be credited for the EPA settlement against the pre-March 1, 2004, response costs. The reason for this is simple: Currently, Borax has received only a small portion of the EPA settlement (and that only after the original Allocation Order), and it is still uncertain what the final settlement payout will be. Yet, Borax definitely has incurred costs of $1,160,673.17 up to March 1, 2004. It is fundamentally unfair for Borax, which is responsible for only 10% of the response costs, to front the other parties' 90% share while awaiting reimbursement, yet allow K.C. 1986 and the Hornes to receive all their credits now. In effect, this would allow K.C. 1986 and the Hornes to benefit immediately from the settlement, while Borax, who has voluntarily undertaken the massive and expensive cleanup effort, cannot.

This approach aligns with CERCLA's policy of encouraging settlement. *See United States v. Conservation Chem. Co.*, 681 F. Supp. 1394, 1416 (W.D. Mo. 1988); *see also United States v. Occidental Chem. Corp.*, 200 F.3d 143, 150 n.8 (3d Cir. 1999) (explaining that Congress made

5

Case 4:02-cv-00853-NKL   Document 515   Filed 10/03/07   Page 5 of 11

deliberate policy choice to encourage settlements); *B.F. Goodrich v. Betkoski*, 99 F.3d 505, 527 (2d Cir. 1996) (clarified and denied rehearing by 112 F.3d 88 (2d Cir. 1997)) ("Courts considering CERCLA cases have recognized that the usual federal policy favoring settlements is even stronger in the CERCLA context."). If a non-settling party could immediately reap the benefits of a government settlement, while the settling-party could not, it would eliminate a significant incentive for parties to enter into consent decrees with the EPA. Potentially Responsible Parties, in their attempts to game the system, would simply wait, escaping response costs and other costs associated with negotiating and securing a government settlement. In fact, that appears to be the strategy of K.C. 1986 and the Hornes: Let Borax spend its limited time and financial resources securing settlements to help recover clean-up costs, then take advantage of those settlements to escape their own contribution responsibilities. Further, CERCLA's policy against double recovery should work both ways: K.C. 1986 and the Hornes should not receive a windfall from Borax's EPA settlement by being able to immediately apply the credits to the response costs they owe, while Borax must spend money for response costs and then wait years for government reimbursement.

There is nothing in the CERCLA statute or the Eighth Circuit's mandate requiring the Court to apply these credits specifically to the pre-March 1, 2004, response costs. Indeed, it would be inequitable and against CERCLA's policies to let K.C. 1986, Victor Horne and the Horne Estate benefit from the EPA settlement at this time, while Borax–the party who shouldered the cleanup and negotiated the government settlement–cannot. *See K.C. 1986*, 472 F.3d 1009, 1017 ("In resolving contribution claims in general, CERCLA directs the court to 'allocate response costs among liable parties using such equitable factors as the court determines are appropriate.'" (quoting 42 U.S.C. §

9613(f)(1)).  Additionally, the actual EPA settlement amount is still uncertain because post-judgment response costs have not been ascertained.

Therefore, having considered the matter fully, the Court amends its allocation order dated January 7, 2005 to provide that future response costs for the site shall be allocated as follows: U.S. Borax 10%, K.C. 1986 20%, Victor Horne 22%, Horne Estate 48%.  Against these future response costs, K.C. 1986, Victor Horne and the Horne Estate shall be given a pro rata share of Borax's EPA settlement credits based on each parties allocated liability.  Borax will receive 10% of the EPA settlement credits, Victor Horne 27%, K.C. 1986 20% and the Horne Estate 48%.  This allocation ensures that neither Borax nor the Horne entities will receive a windfall and permits the Court to determine the future response costs and the credits in the same proceeding.  This will increase the accuracy of the Court's allocation.

In summary, the percentage allocation of the EPA credit is established in this judgment but the amount of the credit will be established in a separate proceeding once the record is fully developed.  Even if the Horne entities owe Borax less in future response costs than the credits they are owed, an adjustment can be made in future proceedings.  However, the evidence developed during this protracted litigation strongly indicates that the Hornes are likely to owe well in excess of the credit to which they are entitled.

*2.     Private Settlements*

The Court will also give credit to K.C. 1986 and the Hornes for the private settlements reached by Borax.  But, for many of the same reasons articulated above, the private settlements will be applied only to post-March 1, 2004, response costs.  The Eighth Circuit directed this Court to take the private settlements "into its equitable consideration in the allocation process." *K.C. 1986*, 472

F.3d at 1018. In weighing the equities, the Court gives substantial weight to the fact that Borax voluntarily contributed all of the money for the Armour Road Site cleanup, and through its attorneys did all the work negotiating and securing these settlements. Borax has expended substantial money and resources in cleaning up the Site and obtaining these settlements. In addition, K.C. 1986 and the Hornes have not behaved as responsible citizens during the Site clean up or during the litigation to allocate responsibility for the response costs. *See, e.g.,* January 7, 2005, Allocation Order at 9-33, 36; *see also K.C. 1986*, 472 F.3d at 1017 (stating reallocation will "not require the revision of any findings or conclusions made in the Allocation Order").

Therefore, as in the case of the EPA settlements, the private settlement credits should be applied when the determination of post-March 1, 2004 response costs is made. There is no possibility of a windfall or of double recovery for Borax because the settlement credits will be deducted from the amount owed by K.C. 1986 and the Hornes when all of Borax's response costs are determined. The Court anticipates that even after deducting all the settlement credits, K.C. 1986 and the Hornes will still owe Borax substantial amounts of money, possibly in excess of the assets available to pay the debt.

The Court has also decided not to give settlement credits against the pre-March 1, 2004, response costs because of the uncertainty of how the remaining response costs will be paid. The Court is well aware of the problems associated with the Reade Estate and the impact of a Florida probate court's order permitting that estate to escape responsibility for paying for the Site cleanup, despite the fact that the decedent was the primary polluter. *See* January 7, 2005, Allocation Order at 2. Due to the uncertainty of the Hornes' solvency it is equitable that the credits be applied to

8

future response costs and not the $1,160,673.17 response costs that have already been assessed by the Court.

Therefore, the Court orders that K.C. 1986 and the other Horne entities will receive a pro rata share of the private settlement credits which Borax obtained. This credit will be applied against the post March, 2004 response costs which are to be determined at a later time. Each Horne entity will receive the same percentage share of the private settlement credits as that entity owes for response costs.

The Court's allocation formula tracks that used in *Akzo Nobel Coatings, Inc. v. Aigner Corp.*, 197 F.3d 302 (7th Cir. 1999), which was cited favorably by Eighth Circuit in its mandate. *See K.C. 1986*, 472 F.3d at 1017. In *Akzo*, the Seventh Circuit held that the district court must consider how much Aigner had collected from third parties in settlement. *See* 197 F.3d at 308. In suggesting how the district court might fashion its new allocation order, the court explained:

> Phrasing Akzo's liability as "12.56% of the cleanup cost net of third-party collections" or some similar formula will avoid any need to reopen the judgment under Fed. R. Civ. P. 60(b)(5) to account for the outcome of litigation now pending or to be filed in the future.

*Id.* Notably, in *Akzo*, the court was also dealing with future response costs, not just costs already incurred, and the language suggested by the Seventh Circuit accounts for those future costs. Here, the Court has come up with a similarly phrased allocation, taking into account the equities and the uncertain nature of the EPA settlement amount. Like *Akzo*, this Court's order also considers future response costs and will avoid any need to reopen this judgment. K.C. 1986 and the Hornes will receive their settlement credits; however, equity and the circumstances dictate that the credits will be applied only to the post-March 1, 2004, response costs. Of course, if the parties wish to resolve

9

these issues more quickly, they are free to assess the credits themselves through a settlement agreement.

### C. Prejudgment Interest

Because the Court applies the settlement credits to the post-judgment response costs, prejudgment interest on the $1,160,673.17, incurred prior to March 1, 2004, remains the same. Borax is entitled to prejudgment interest in the amount of $98,664.36. The parties are to pay this amount in accordance with their allocated percentages specified in this Order.

### D. Future Response Costs

Nothing in the Eighth Circuit's mandate or in this Order abrogates the parties' obligations to pay for future response costs. Future response costs are to be allocated according to the percentages modified in this Order. Moreover, the parties are entitled to settlement credits against these future response costs in accordance with the formula specified in this Order.

## III. Conclusion

Accordingly, it is

ORDERED that DeAngelo is not liable as a successor corporation to Habco and its 15% share is reallocated to Victor Horne and the Horne Estate in accordance with the original Allocation Order. Thus, the recalculated allocation is that Borax is responsible for 10% of the response costs; K.C. 1986, Limited Partnership, is responsible for 20% of the response costs; Victor Horne is responsible for 22% of the response costs; and the Horne Estate is responsible for 48% of the response costs. It is further

ORDERED that the response costs incurred by Borax up to March 1, 2004, is $1,160,673.17. K.C. 1986, Limited Partnership, shall pay $232,134.63 to Borax; Victor Horne shall pay $255,348.10 to Borax; and the Horne Estate shall pay $557,123.12 to Borax. It is further

ORDERED that the future response costs for the Site located at and near 2251 Armour Road, North Kansas City, Missouri, are similarly allocated: U.S. Borax, Inc.: 10%; K.C. 1986, Limited Partnership: 20%; Victor Horne: 22%; the Horne Estate: 48%. It is further

ORDERED that each party is entitled to a pro rata settlement credit against their share of post-March 1, 2004, response costs. The EPA settlement credit and the private settlement credits shall be allocated: U.S. Borax, Inc. 10%, K.C. 1986 Limited Partnership: 20%; Victor Horne: 22%;the Horne Estate 48%. It is further

ORDERED that Borax is entitled to prejudgment interest in the amount of $98,664.36. The parties are to pay this amount in accordance with the percentages specified in this Order.

  s/ Nanette K. Laughrey  
NANETTE K. LAUGHREY  
United States District Judge

DATE: <u>October 3, 2007</u>  
Jefferson City, Missouri

11